## Spangler *against* Commonwealth.

The settlement of the accounts of a Brigade Inspector, by the accounting officers of the state, is conclusive evidence of the balance due by him in an action against his surety in the court of common pleas.

ERROR to a special court of *York* county, in which Judge Hays presided. The Commonwealth *against* William Wagner, administrator of Ferdinand L. Spangler, deceased.

This suit was brought on the official bond of Michael H. Spangler, brigade inspector of the first brigade of the fifth division of the Pennsylvania militia. His sureties were Ferdinand L. Spangler and Thomas Eichelberger; and they were jointly and severally bound in 5000 dollars, on condition that Michael H. Spangler should well and truly and faithfully execute and perform the several duties of his office of brigade inspector, agreeably to the militia laws of this commonwealth. It was for a breach of this condition, in not paying over a balance of surplus money remaining in the hands of Michael H. Spangler, as brigade inspector, and belonging to the state, that this action was instituted against the administrator of Ferdinand L. Spangler.

The plaintiff gave in evidence the accounts of Michael H. Spangler, as brigade inspector, as settled by the auditor-general and state treasurer, at different periods, exhibiting the balances against him.

The points put to the court below, and their answers, exhibit the matters of defence.

1. That if the said Michael H. Spangler received from the commonwealth other moneys than such as he had a right to receive as brigade inspector, and brought them into his accounts blended with moneys legally chargeable against him, it is incumbent on the plaintiff to show that the balance sued for, consists of moneys legally chargeable against the said Michael H. Spangler, as brigade inspector.

To which point the court answered:

This would be true if it appeared from the settlement produced by the plaintiff, in submitting the demand to the court and jury, that Michael H. Spangler had received such moneys, and brought them into his account. If, however, the fact were as here assumed; but

VIII.—F

it was made appear by the defendant, that such other moneys, for which he was not responsible, were introduced into the account of the brigade inspector, and blended with moneys for which the defendant was responsible as surety, then it was his duty to show the amount of such other moneys, in order to discharge himself from liability with respect to them.

The defendant also requested the court to charge

2. That if the jury believe, that without the amounts drawn in estimates one, two, three and four, there would be no balance due to the commonwealth on the accounts of Michael H. Spangler, as brigade inspector, they are bound to find for the defendant.

To which the court answered:

This would not follow; because these "estimates" are the statements which were made by Michael H. Spangler conformably to the 50th section of the act of the 2d of April 1822. They are the statements of expenses incurred in his brigade, which it was his duty to exhibit at his annual settlements.

The defendant also requested the court to charge.

3. That the defendant is not liable for money advanced to Michael H. Spangler, to pay expenses incurred in the time of his predecessor in the office of brigade inspector, before he had ascertained what those expenses were, and exhibited them to the auditor-general.

To which the court answered:

The law made it the duty of Michael H. Spangler, as brigade inspector, to take charge of the books, vouchers, papers and public property, which had been in the possession of his predecessor. It was his duty to account for the same; and he was bound to pay into the state treasury the surplus arising from fines and forfeitures which remained after payment of the sums and expenses incurred in the time of his predecessor and which came into his hands,—and for the breach of this duty his surety would have been responsible.

This matter, however, does not belong to the present case, unless it appears that such surplus constitutes a part of the balance now claimed by the commonwealth.

The several answers of the court were assigned for error.

*Mayer*, for plaintiff in error.
*Hambly*, for defendant in error.

The opinion of the Court was delivered by

HUSTON, J.—On the 30th of March 1811, an act of assembly passed, under which the accounts of all officers were settled and payment of money due to the state enforced; some few provisions, for particular cases, have been enacted since, which will be noticed so far as they are applicable to this case.

The first sections empower the auditor-general to settle all accounts where the party appears before him, or to compel the appearance of the party and witnesses; and after the account is

thus settled, the same, with all the vouchers, is directed to be transmitted to the state treasurer for revision and approbation, and it gives him the same power to cite parties and witnesses. In case of the disagreement of these officers, the whole matter, with the reasons of each officer, is to be submitted to the governor, and the decision of the governor to be conclusive as to those officers.

By the ninth section, the auditor-general is to transmit the account, where a balance is found due from any person, to that person within thirty days, and if not paid within six months, a copy of the account is to be given to the state treasurer, who is to proceed to collect the same by suit; by act of 29th March 1813, this duty is imposed on the auditor-general.

By the eleventh section an appeal is given to every person, to the court of common pleas of the county in which the seat of government may be; which appeal is, by the auditor-general, to be transmitted to the clerk of said court, and which shall be tried as other suits in said court: provided, that such appeal be filed within sixty days after notice of such settlement.

By the twelfth section, the amount or balance found due against any person is to be a lien on the real estate of such debtor, and his or their securities throughout the commonwealth.

By the fourth section of an act of 16th April 1827, the auditor-general is directed to transmit to the prothonotaries of the respective counties, certified copies of these liens, to be by them entered on the docket of the court of common pleas.

By the sixteenth section, the auditor or treasurer is authorized to revise any account which has not been appealed from, or by some other proceeding taken from their offices: provided, request be made within twelve months from the date of the settlement.

By the twenty-ninth section, the settlement of accounts not expressly provided for by this act, shall be made at such times as the accountant officers may deem proper, and on the same principles and under similar forms, and subject to like proceedings in every respect as other accounts.

On the 2d of April 1822, was passed an act for the regulation of the militia of this commonwealth. Many duties are, by this law, required to be performed by the brigade inspectors; among other things, it is enacted, " they shall keep an accurate account of all moneys received and expended by them;"—" they shall annually, in the month of January, settle with the auditor-general, who is hereby required to settle and adjust their accounts, and shall pay to the state treasury any surplus arising from fines and forfeitures, which may remain after payment of the sums and expenses directed to be paid by this act," &c.

By the fiftieth section it is provided—" it shall be the duty of each brigade inspector, at the time when he is annually required to settle his accounts, to exhibit to the auditor-general a statement of the expenses incurred in his brigade for the preceding year, which

statement the said auditor-general is required to examine and ad-just, making the allowances intended by law; and if, on the settle-ment of the accounts of said brigade inspector, it shall be found. that the fines and forfeitures have been insufficient to pay the ex-penses so adjusted and allowed, then the auditor-general shall draw his warrant on the state treasurer for the amount of such deficiency, which the brigade inspector shall immediately thereafter pay to the officers or persons entitled to receive the same."

This law did not require the brigade inspector to give sureties; but by the third section of an act of 11th April 1825, each brigade inspector is required to enter into bond, in such sum and with such security as may be approved by the court of quarter sessions of the county in which said brigade inspector shall reside, conditioned for the faithful performance of his trust to the commonwealth."

The paper book does not purport to give us all that occurred in the court below, and I shall notice only the matters argued here. The bill of exceptions was passed over; although it may not be possible to collect all that may be found due, that is no reason why a judgment should not be obtained; if the estate is not sufficient to pay all, still we must ascertain the debt, that plaintiff may recover *pro rata* according to law.

After the testimony was closed, the defendant submitted certain points on which the court were requested to deliver opinions; we have only the second, fourth and fifth.

The second is—If the said Michael Spangler received from the commonwealth other moneys than such as he had a right to receive as brigade inspector, and brought them into his accounts blended with money legally chargeable against him, it is incumbent, in this case, to show that the balance sued for in this case, consists of mo-neys legally chargeable against the said M. H. Spangler as brigade inspector.    To this the court answered:

" This would be true if it appeared from the settlement produced by the plaintiff in submitting his demand to the court and jury, that Michael H. Spangler had received such moneys and brought them into his account.  If, however, the fact were as here assumed —but it was made appear by the defendant that such other moneys for which he was not responsible were introduced into the account of the brigade inspector, and blended with moneys for which he the defendant as surety was responsible—then it was his duty to show the amount of such other moneys in order to discharge him-self from liability with respect to them."

The fourth point is, If the jury believe that without the moneys drawn in estimates, one, two, three, and four, there would be no balance due the Commonwealth on the accounts of Michael H. Spangler as brigade inspector, they are bound to find for defendant. To this the court answered, " This would not follow, because these 'estimates' are the statements which were made by Michael H. Spangler conformably to the 50th section of the act of the 2d of

April 1822.   They are the statements of expenses incurred in his brigade, which it was his duty to exhibit at his annual settlement."

The fifth point was, " That the defendant is not liable for money advanced to Michael H. Spangler to pay expenses incurred in the time of his predecessor in the office of brigade inspector before he had ascertained what those expenses were, and exhibited them to the auditor-general.

To which the court answered, "The law made it the duty of Michael H. Spangler, as brigade inspector, to take charge of the books, vouchers and public property which had been in the possession of his predecessor, (who had died.)   It was his duty to account for the same, and he was bound to pay into the state treasury the surplus arising from fines and forfeitures, which remained after payment of the sum and expenses which were incurred in the time of his predecessor, and which came to his hands, and for the breach of this his sureties are responsible.   This matter, however, does not belong to the present case, unless it appears that such surplus constitutes a part of the balance now claimed by the Commonwealth;" and the judge might have added, this does not appear, but the direct contrary.

" These are all in substance the same, and are all founded on the supposition that something was illegally introduced into the accounts of the brigade inspector.   How the word 'estimate' got into use instead of the word 'statement,' used in the law, I know not.   It is, however, most apparent the words of the law were complied with, and its spirit too—for in every account we find an item designated thus—Cr. by disbursements in said brigade for the year 1831, as per statement in detail and vouchers filed herewith,"—and a sum stated, and this in every year, perhaps it may receive some light from an entry dated the 18th of July 1833, and is as follows: To cash expended in said brigade per account and vouchers filed herewith, 68 dollars 77 cents, settled and entered, Daniel Sturgeon, auditor-general's office, July 13th, 1833; approved, A. Mahon, treasury office, July 18th, 1833.   N. B. This account settled to give a credit to Michael H. Spangler for vouchers rejected in settlement of account of the 7th of May 1833, not rendered in proper form, and not in any manner to affect the settlement of the 7th of May 1833. Now the machinery is so complicated, so many appeals, so many exonerations from fines, or for the impossibility of collecting fines, such allowance in the acts cited for revision of accounts, if applied for within the prescribed times, that the word "estimate" was written on the account as first exhibited—but the account was settled on the production of regular vouchers which are preserved in the office—and an account thus supported by vouchers in detail, would seem to be much more properly called a statement than an estimate.

The cause before us was not put on any error in the charge, except in one particular, which I will presently notice.

The counsel insisted that they could not understand the accounts

III.—F*

and estimates as produced from the office, but did not show that there was any error.    In different offices accounts are kept in different modes, and, though every person at first sight may not understand this mode—nay, though no person can easily understand it from seeing copies of a few detached papers without seeing the whole and the books, yet I do suppose the whole is in all cases intelligible to any accountant who sees the whole.

The act of 1811 is now of standing in point of time; many thousand accounts have been settled under it.    The officers who settled these accounts had much experience.    These accounts were settled at different periods: the last of them in 1834, and the others in preceding years.    The law cited gave.an appeal from each of them .within sixty days from the settlement, and a revision within one year if asked for, and made the several balances liens.    Now it would be too much to ask a court, in 1839, to inspect a few loose papers, and decide on them that all were wrong.    It would seem the balances of each year were brought into the account of the succeeding year; so the law directs, and so, as I understand it, the accounts show on their face.    We have not the narr, nor pleas, nor amount claimed, nor amount of the verdict on the paper books. No error in any of these is pointed out, but we are asked to reverse a judgment on general and, as it seemed to the court below and to us, vague objections.

But it has been alleged here, though not directly in the court below, that although the account settled in the proper offices may be conclusive on the officer, it is not so, or is less so, in a suit against his surety, as this is.    The fifteenth section of the act of 1811, parts of which were before cited, says: The state treasurer (now auditor) may, if he deem it conducive to the public interest, proceed immediately against the sureties of any public delinquent.    This section comes in after the provisions for settlement, appeal and lien on the real estate of the person indebted, and his *sureties* throughout the commonwealth.    Now it would be strange, if an account settled and not appealed from, should be a lien on the estate of a surety, and yet no evidence in a suit against him.

Something was also said about a difference in the liability of an officer and of his surety in an official bond.    It is not necessary to go into an examination of all the cases on this subject: perhaps the true rule will be found in 4 *Dall.* 96, where there is a joint obligation.    The law does not recognise abstractly the character of a surety: after all, sureties must be bound according to the true construction of the obligation, whatever may be the form of expression.

The officer may be liable in some form of action, though not sued on the bond, and in the Commonwealth *v.* West, 1 *Rawle* 31, it was held that West was not liable, on the ground that the officer would not have been liable *in an action on the bond;* and the Chief Justice says, " I certainly do not pretend that, at law, the liability of a surety, especially on a joint obligation, is to be dis-

[Spangler v. Commonwealth.]

tinguished from that of the principal." A surety may be released in some cases by an act of the obligee.

The very points here made have been before this court in suits on accounts se tled under the act of 1811, by the auditor and treasurer, accounts, too, of brigade inspectors, and in suits against their sureties.

In 1 *Penn. Rep.* 52, The Commonwealth *v.* The Administrators of P. Farrelly, who was bail in the official bond of Richard Bean, a brigade inspector, the commonwealth gave in evidence the bond, and a settled account, duly certified under the hand and seal of the auditor-general; and it will be observed the debit was in part or in whole of fines incurred in the time of the predecessor of Bean, and which he collected, or ought to have collected. After showing this certified copy of the account settled, duly certified, the attorney for the state rested his case, and the court of common pleas decided that this was not sufficient to recover. On a writ of error brought, this court, on the opening of the case, desired the counsel, who were to support the decision, to proceed—and reversed the judgment of the common pleas.

The same matter had been before this court in the preceding court at Lancaster, 1 *Rawle* 282, The Commonwealth *v.* Aurendt. The case had been tried before Rogers, J., at a circuit court holden in Berks county. This also was a suit against a brigade inspector, whose account had been settled under the act of 1811; and copy of the account as settled, duly certified was given in evidence. The judge (see page 284) directed the jury that the account was sufficient to support the action, and that the settlement not having been appealed from, was final and conclusive, &c. The case was fully argued in this court by able counsel, but turned chiefly on the objection to the settlement being approved by the chief clerk of the treasurer, who signed his approval as such. The objections now made, were either not made, or abandoned, after a feeble attempt to support them.

This last case was a suit against the brigade inspector himself, but taken in connection with the case in 2 *Penn. Rep.* 52, before cited, which was against the administrators of a surety, the two cases meet, and decide all the points made in this case, and fully answer the last objection, that the charge took the case from the jury. Where the plaintiff's case rests on testimony which a jury may believe or not believe, or where there are facts given in evidence which may amount to a defence, the case cannot be taken from a jury; but where the claim is admitted, or proved by a record, or, as in the present case, something equivalent to the record of a court, and the defence is matter of law, on which the court must decide, it would be error to submit this to a jury without the expression of a clear and explicit opinion.

It has not been considered necessary to notice a fact which appears by the record, viz. that Ferdinand Spangler, the surety of

Michael, was the administrator of Michael, and was the person who settled the accounts with the auditor-general, and of course had full notice, and ought to have appealed if he thought any thing wrong. It was not necessary to notice it, because whoever becomes surety for a public officer, is bound to know how, and when, and by what officer and tribunal the accounts of the officer are to be settled; and by the law, the amount found due on such settlement is a lien on his estate, unless appealed from.

Judgment affirmed.